J-S25002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: C.E.L.M.P., A MINOR<br><br>APPEAL OF: B.P., FATHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br>No. 3222 EDA 2016 |

Appeal from the Order September 13, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):
CP-51-AP-0000771-2016
CP-51-DP-0001804-2014
FID: 51-FN-001755-2014

BEFORE:  BENDER, P.J.E., RANSOM, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 16, 2017**

B.P. ("Father") appeals from the September 13, 2016 order that granted the petition filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate his parental rights to C.E.L.M.P. ("Child"), born in January of 2010.  We affirm.

In its opinion, the trial court set forth the factual and procedural history of this case, as follows:

> The family in this case first became known to DHS on June 8, 2014, when DHS received a Child Protective Services ("CPS") report that Child's brother C.T. ("Brother") sexually assaulted Child in the home of Father and T.T. ("Mother"), Child's mother. This report was indicated.  Child participated in a forensic interview with Philadelphia Children's Alliance ("PCA"), where she described being forced to have vaginal, anal and oral sex with Brother.  Mother and Father denied to DHS that they knew of the abuse.  On June 27, In-Home Protective Services were implemented by a Community Umbrella Agency ("CUA").  On July 29, 2014, DHS received a report that Child had been sexually assaulted by another of her brothers.  At a second PCA interview Child described anal and oral sex with this second

brother. DHS obtained an Order of Protective Custody, removed Child and placed her in a foster home. On August 8, 2014, the court adjudicated Child dependent and fully committed her to DHS custody. CUA developed a Single Case Plan ("SCP") with objectives for Father. Over the course of 2015 and 2016, Father did not successfully complete his SCP objectives. On June 16, 2016, DHS filed a petition to terminate Father's parental rights. The goal change and termination trial was held on July 1, 2016. The CUA supervisor testified that Father's visits had been changed on June 6, 2016, at an emergency hearing to be line-of-sight, line-of-hearing. The visits were changed by court order because during visits Father would hide behind a newspaper and speak[] inappropriately to Child and her siblings. Since that hearing, Father still whispers to the children during visits in violation of court orders. The CUA supervisor testified that Father had coached Child, telling her to write a letter asking for reunification. Father also called Child's foster parent[] frequently, and was so rude … that the foster parent[] became afraid. Father was ordered to stop calling the foster parent[]. After Father was ordered to stop calling, an unknown male called Child at the foster parent['s] home, claiming he knew Child through Father. Because Father will not obey court orders, and because CUA does not have adequate personnel to enforce orders if they are willfully violated, CUA was unable to provide safe visitation for Child and her siblings. Father coaches Child and her siblings on what to say to CUA, and this makes the children upset. Father refused to comply with court orders. Father has anger issues, and cursed at the CUA supervisor during the termination trial, while the attorneys were at sidebar with the judge. Following argument, the trial court found that Father presented a grave threat to Child and her siblings, and suspended Father's visitation with all of them. The court then incorporated all relevant testimony from the grave threat hearing into the termination and goal change proceedings. The current CUA social worker testified that Child came into care twenty-three months ago. Mother and Father attend SCP meetings and know their objectives. Because Father is often at work, he delegated most parenting duties to Mother. Mother is not capable of keeping Child safe on a day-to-day basis. Father's objectives are to take parenting classes, attend mental health treatment, a domestic violence program and visit with Child. Father has not attended parenting classes. Father is involved in mental health treatment, but has not signed current releases to permit CUA to assess his treatment progress. Father

has not provided any documentation that he participates in mental health. He only provided a therapist's telephone number. The CUA social worker referred Father for domestic violence counselling, but there is no record of him engaging since Child came into care. Father lives in an appropriate house, but does not have a lease. Father had unsupervised visits with Child, but took Child to see the sibling who had sexually abused Child, and visits were changed to supervised by the trial court. Father's visits were changed to supervised, but he still whispers to Child to coach her. Child is in care because of sexual abuse by a sibling. Father works long hours. Father is late to visits. Father has been asked, but he never provided his work schedule to CUA. Child does not talk about Father outside of visits. Child would suffer no irreparable harm if Father's rights were terminated. Child is engaged in trauma therapy because of the sexual abuse she suffered. Father has not involved himself in Child's therapy. Foster parent ensures that Child attends her trauma therapy. Father had previously failed to enroll Child's sibling in trauma therapy as ordered by the trial court. Child is in a pre-adoptive home. She calls the foster parent her "aunt" and is very happy with her. It is in her best interest to be adopted. The foster parent keeps Child safe and protected. Father is not able to keep her safe and meet her needs. Father testified that he attempted to engage in domestic violence counselling, but the provider never responded. Father testified that, against CUA's instructions, he tells Child at visits that she will be reunified with him soon. Because Mother wished to sign[] voluntary relinquishments of her parental rights, the trial court held it[s] decision in abeyance. At the next court hearing on September 13, 2016, Mother had not signed. The trial court terminated Mother's and Father's parental rights under 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b). On October 6, 2016, Father filed this appeal.[1]

> [1]Mother has also appealed the termination of her parental rights. *See In the Interest of C.E.L.M.P., a Minor*, 3221 EDA 2016[.]

Trial Court Opinion (TCO), 11/21/16, at 1-3 (citations to the notes of testimony omitted).

Following its rendition of the facts and procedural history quoted above, the trial court discussed the basis for its decision to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b), setting forth the facts from the documentation and testimony presented at the July 1, 2016 hearing. In its conclusion, the court stated that it found that DHS had carried its burden of proof and that the termination "would best serve Child's emotional needs and welfare." *Id.* at 11.

On appeal, Father raises the following issues for our review:

1. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §2511(a)(1)?

2. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §2511(a)(2)?

3. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §2511(a)(5)?

4. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §2511(a)(8)?

5. Whether the [t]rial [c]ourt erred by terminating the parental rights of [Father] under 23 Pa.C.S.A. §2511(b)?

Father's brief at 5.

We review an order terminating parental rights in accordance with the following standard:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must

stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879

A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court is free to believe all, part, or none of the evidence presented

and is likewise free to make all credibility determinations and resolve

conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super.

2004). If competent evidence supports the trial court's findings, we will

affirm even if the record could also support the opposite result. *In re*

*Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We are guided further by the following: Termination of parental rights

is governed by Section 2511 of the Adoption Act, which requires a bifurcated

analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in

the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

With regard to Section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

The trial court here terminated Father's parental rights pursuant to section 2511(a)(1), (2), (5), (8) and (b). In order to affirm, we need only agree with the trial court as to any one subsection of section 2511(a), as

- 6 -

well as section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Father's brief provides argument regarding all four subsections of section (a). We have chosen to address and analyze the court's decision to terminate Father's parental rights under section 2511(a)(1) and (b), which provide:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > ***
>
> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

In *In re Z.P.*, 994 A.2d 1108 (Pa. Super. 2010), this Court provided direction relating to what considerations need to be addressed when reviewing a trial court's decision to terminate parental rights under various

subsections of 2511(a). Specifically, relating to subsection (a)(1), the ***Z.P.***

Court stated:

> A court may terminate parental rights under Section 2511(a)(1) where the parent demonstrates a settled purpose to relinquish parental claim to a child **or** fails to perform parental duties for at least the six months prior to the filing of the termination petition. ***In re C.S.,*** [761 A.2d 1197 (Pa. Super. 2000)]. The court should consider the entire background of the case and not simply:
>
>> mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his … parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.
>
> ***In re B.,N.M.,*** 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied,* 582 Pa. 718, 872 A.2d 1200 (2005) (citing ***In re D.J.S.,*** 737 A.2d 283 (Pa. Super. 1999)).

***In re Z.P.***, 994 A.2d at 1117 (emphasis in original).

Essentially, Father argues that the evidence provided by witnesses for DHS was insufficient to prove that his actions "evidenced a settled purpose of relinquishing his claim to [Child] and [that he] failed to perform parental duties." Father's brief at 15. In his brief, Father appears to attempt to contradict testimony relating to a failure on his part to comply with the objectives he was required to fulfill. Rather, he tries to convince this Court that he in fact did work on the objectives and that any failures should have been attributed to someone else. In discussing the facts relating to section 2511(a)(1), the trial court found:

The petition for involuntary termination was filed on June 6, 2016. During the six-month period prior to the filing of the petition, Father's objectives were to take parenting classes, attend mental health treatment, a domestic violence program, and visit with Child. Father attends SCP meetings and knows his objectives. Father claims he has taken parenting classes, but has never provided CUA with any evidence or documentation that he had actually done so. During the six-month period, Father did not sign current releases to enable CUA to assess his mental health treatment. Father has also not provided any documentation. Father did not engage with domestic violence counselling during the six-month period, or throughout the life of this case. During the entire six-month period, Father's visits with Child were supervised, but he had been unsupervised earlier in the case. Visits were changed from unsupervised to supervised because Father took Child to see the sibling who had sexually assaulted her. Father is late for visits. CUA asked him for a work schedule, but he provided none. During visits, he tells Child that she will be reunified with him soon. Father coaches Child and her siblings, making them upset. Father tries to avoid the court order requiring line-of-sight, line-of-hearing visitation restrictions by hiding behind a newspaper to improperly coach Child to write a letter request[ing] reunification. Father calls or has other people call the foster parent[] to inappropriately contact Child. Father is often at work and has delegated most parental duties to Mother. Father has failed to perform parental duties. Father has refused to participate in Child's therapy. Looking back beyond the six-month period, Father's compliance with objectives has been decreasing over the life of this case, with visits going from unsupervised to supervised to suspended. Father has not successfully completed his objectives. As a result, the trial court did not abuse its discretion by finding clear and convincing evidence that Father, by his conduct, has refused and failed to perform parental duties, so termination under this section was proper.

TCO at 4-5 (citations to notes of testimony omitted).

As found by the trial court, Father failed to complete most of the objectives, in particular, those dealing with parenting, domestic violence, and mental health. In fact, the court found that Father's compliance

- 9 -

decreased over time, most notably, that visits with Child went from unsupervised, to supervised, and eventually, the visits were suspended. Thus, the court concluded that Father refused or failed to perform his parental duties for a period of at least six month prior to the filing of the petition to terminate his parental rights. *See In re B.,N.M.*, 856 A.2d at 855 (stating "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances").

Our thorough review of the record reveals that the trial court did not abuse its discretion in ordering the termination of Father's parental rights. The record supports the court's findings and conclusion that Father's refusal or failure to perform parental duties occurred for a period of at least six months prior to the filing of the petition. Since Father has not convinced us otherwise, we conclude that he is not entitled to any relief.

Lastly, we address Father's fifth issue in which he claims that DHS failed to provide sufficient evidence to establish that termination would best serve Child's needs and welfare under 23 Pa.C.S. § 2511(b). In his brief, Father sets out the law relating to section 2511(b), but only includes the following two sentences to support his position relating to Child's needs and welfare:

> Father testified that during the visits he and the child would
> discuss her day, her book, her medals and about going

- 10 -

swimming.  They would discuss memories between the child and father (N.T. 7/1/2016 p. 124).

Father's brief at 19.   Meanwhile, the trial court's opinion includes the following discussion in relation to this section, stating:

> Father has consistently been late to visits with Child.  He told CUA this was because of his job, but has not provided a schedule to allow CUA to change visits to comply with his schedule.  Early in the life of this case, Father had unsupervised visits with Child, but he took Child to see the sibling who had sexually abused Child.  Father's visits were changed to supervised.  Father began calling the foster parent[] to contact Child and coaching Child during visits to write a letter requesting reunification.   After Father was ordered to stop calling, an unknown male began calling in his place.  Father testified that he whispered to Child during visits, telling her she would be reunified with him soon. He continued doing so, knowing that it violated CUA visitation policies and court orders.   Father's coaching and hints at reunification have a negative effect, and upset Child and her siblings.   As a result, his visits with Child were suspended. Father has not involved himself in Child's trauma therapy. Foster parent ensures that Child attends trauma therapy.  Child does not talk about Father outside of visits, and would suffer no irreparable harm if his rights were terminated.  Child knows her Father.  Child has been placed in a pre-adoptive home with her current foster parent[] for nearly two years.  She calls the foster mother her "aunt" and is happy and safe with her.  It is in Child's best interest to be adopted.  Father has a job and appropriate housing although he has not provided a lease and rental license to CUA.   DHS witnesses were unwavering and credible. Consequently, the court did not abuse its discretion when it found that it was clearly and convincingly established that there was no positive, beneficial parent-child bond with Father, and that termination of Father's parental rights would not destroy an existing beneficial relationship.

TCO at 10 (citations to notes of testimony omitted).

Father's minimal argument does not convince us that the trial court erred in its conclusion that no beneficial relationship existed between Father

and Child that would have a negative effect on Child if it were severed. Rather, the evidence shows that Child and foster mother have developed a beneficial bond. Moreover, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.P.*, 994 A.2d at 1125. "[A] parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d at 856. Again, Father is not entitled to relief.

Accordingly, because we conclude that the trial court did not abuse its discretion by involuntarily terminating Father's parental rights to Child, we affirm the order terminating those rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/16/2017

- 12 -